STATE of Missouri, Plaintiff-Respondent,

v.

Terry GROTHE, Defendant-Appellant.

No. 36885.

Missouri Court of Appeals,
St. Louis District,
Division Three.

Aug. 10, 1976.

Daniel W. Deiter, Montgomery City, for defendant-appellant.

James G. Gregory, Montgomery City, John, C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Sheila K. Hyatt, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

GUNN, Judge.

Defendant appeals his § 561.460 RSMo. 1969 conviction for issuing an insufficient funds check to the Montgomery County Livestock Auction Company.

Defendant's difficulties commenced at a horse auction conducted by the Montgomery County Livestock Company. On the day of the auction, Junior McCowan, as auctioneer for the auction company, had been "caught" with one of the horses offered at auction, and when no one bid on the horse, Mr. McCowan had purchased it for the Livestock Company for $96. After the auction McCowan approached the defendant and offered to sell the horse for $125 which defendant agreed to pay. Defendant issued his check for the horse in the following manner: the defendant signed his name to a check for $125 drawn on his funds in the First North County Bank and Trust Company of St. Louis; the defendant wrote in the figure "$125.00" on the check but allowed McCowan to write "one Hun-dred & twenty Five" in the appropriate space and to have inserted "Montgomery County Livestock Auction Co." as the designated payee. There is no dispute that the funds in defendant's account were insufficient.

On appeal, defendant argues that the State failed to prove that defendant delivered a legal check within the meaning of § 561.460 or that Montgomery County Livestock Auction Company was defrauded and thereby induced to part with its property. Defendant denies that the instrument he gave McCowan was legally a check, because it did not contain the name of the payee. He also contends that he intended the payee to be McCowan, not the auction company and that the evidence failed to establish that he authorized McCowan to place the auction company's name on the check. We believe that the record refutes defendant's contention. From the testimony of the defendant, the jury could find that he was aware of McCowan's association with the auction company; that Montgomery County Livestock Auction Company was the payee; and that he authorized McCowan to have the auction company's name inserted on the check as payee.[1] The

1. The defendant's testimony on cross-examination was in part:

"Q. Is that your signature on the bottom or to [sic] the check of State's Exhibit No. 1?
A. Yes.
Q. Now, you bought the horse, didn't you?
A. Yes.
Q. Now, this check was given for a buckskin horse, wasn't it?
A. Yes, it was.
Q. And it was given and you agreed to pay $125.00 for the horse, didn't you?
A. Yes, I did.
Q. And when you gave the check to Mr. McCowan, you wrote in the numerical figures $125.00 on State's Exhibit No. 1, did you not?
A. Yes.
Q. And you wrote the date, February 16, 1973?
A. Yes.
Q. And you signed your name 'Terry F. Grothe'?
A. Yes.
Q. Did he write—Who wrote in one hundred twenty-five dollars ($125.00) in longhand?
A. Yes, he did.

Q. Did Mr. McCowan do that?
A. Yes.
Q. You handed it to him that way? You didn't care who it was made out to, did you?
A. No. I told him I couldn't spell it.
      *      *      *      *      *      *
Q. (By Mr. Gregory) [Prosecutor] You didn't care who it was made out to?
A. I asked him what I should put on it.
Q. You didn't know how to spell it and you didn't have any room to write Montgomery County Livestock Auction on there, did you?
      *      *      *      *      *      *
Q. (By Mr. Gregory) You didn't have room to write Montgomery County Livestock Auction on the check, did you?
A. I don't know how to spell it.
      *      *      *      *      *      *
Q. (By Mr. Gregory) You didn't write, quote, Montgomery County Livestock Auction Company, close quote, in the check because you didn't know how to spell it, didn't you?
      *      *      *      *      *      *

defendant's testimony is sufficiently clear for the jury to find that he authorized the name "Montgomery County Livestock Auction Company" to be filled in as payee of the check which he signed. The auction company's name was stamped in the appropriate blank space on the check in defendant's presence and by his assent. The U.C.C., § 400.3–115 RSMo.1969, relating to incomplete instruments, provides in part:

> "1) When a paper whose contents at the time of signing show that it is intended to become an instrument is signed while still incomplete in any necessary respect it cannot be enforced until completed, *but when it is completed in accordance with authority given it is effective as completed.*" (emphasis added)

From defendant's testimony it is apparent that McCowan had the name of the auction company inserted on the check pursuant to at least implicit, if not explicit, authority of the defendant, and according to § 400.3–115 the check became effective as completed. As said in *Bruegge v. State Bank of Wellston,* 74 S.W.2d 835, 840 (Mo.1934):

> "Authority to fill in blanks in an instrument need not be express, but may be implied, and when fairly inferable from the conduct of the parties, and circumstances surrounding the transaction, is as effectively given as if expressly conferred."

Here, defendant deliberately left the payee blank for McCowan to have filled in and looked on while the name of the auction company was affixed to the check. Under the evidence, it is chimerical for the defendant to suggest that he did not intend or authorize the Montgomery County Livestock Auction Company to be the payee of the check. Under the circumstances of this case where the check was given to McCowan in payment of the horse purchased by the defendant, with the name of the payee left blank, McCowan was given authority to have the name of the payee inserted in the manner accomplished. *Fitzgibbon Discount Corp. v. Hatchett,* 427 S.W.2d 786 (Mo.App. 1968).

■ The defendant also argues that he did not deliver a "check" as that term is defined in the U.C.C., § 400.3–104(1) RSMo. 1969. This section lists the requisite elements of a negotiable instrument as:

> "(1) Any writing to be a negotiable instrument within this article must
>
> (a) be signed by the maker or drawer; and
>
> (b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this article; and
>
> (c) be payable on demand or at a definite time; and
>
> (d) *be payable to order or to bearer.*" (emphasis added)

As the payee on the check was not designated when it was given to McCowan, the defendant claims it was not legally a "check," and, therefore, he was not guilty of delivering an insufficient funds check. The defendant relies on *State v. Kleen,* 491 S.W.2d 244 (Mo.1973), for the proposition that a violation of § 561.460 does not occur if the instrument delivered fails to include the payee's name. The defendant's reliance on the *Kleen* case is misplaced. There the court was confronted with the issue of whether a violation of § 561.460 had occurred within the State of Missouri. The defendant signed a check in Missouri but left the check incomplete as to the payee and the amount. The check was subsequently completed in Tennessee. It was held that there was no violation in Missouri for issuing an insufficient funds check in Missouri, as the offense of issuing a com-

A. (By Witness) I didn't write it in because I didn't know how to spell it. I didn't write it in because I told him I couldn't spell "hundred".

Q. (By Mr. Gregory) You told him you didn't know how to spell "hundred"?

A. Yes.

Q. I am talking about the name of the payee, Montgomery County Livestock Auction Company. That was stamped, wasn't it? That is a stamp, isn't it?

A. Yes. The woman stamped it when I was going out the door."

pleted check had not occurred in Missouri. However, the court clearly established that if the check had been completed in Missouri by the insertion of the name of the payee and the amount under circumstances parallel to those in this case, a violation of § 561.-460 would result. *State v. Kleen,* supra, is felicitous but works totally to defendant's disadvantage and discomfiture. Applying the principles of *Kleen,* it is observed that defendant violated the statute when the check was completed by the insertion of the name of the payee with the defendant's authority. Thus, under *State v. Kleen,* supra, the facts are sufficient to show that a legal check was delivered by the defendant to Montgomery County Livestock Auction Company. Our decision is consonant with *State v. Kleen,* supra.

In his second attack on the sufficiency of the evidence, the defendant contends that there was no showing that Montgomery County Livestock Auction Company relied on his check or that it parted with any of its property—that it was the victim of the offense charged. The defendant argues that the horse was owned by McCowan and not the auction company, and therefore, if there were a victim it was McCowan. Because he was charged with inducing the auction company to part with its property, the defendant asserts that the evidence does not support his conviction.

■ The essence of a violation of a § 561.460 is that an injured party must rely on some false or deceitful pretense or device and part with his property. *State v. Kleen,* supra; *State v. Garner,* 432 S.W.2d 259 (Mo.1968). The evidence shows that McCowan, who was a stockholder, officer and director of the auction company, opened the bidding on the horse at $96, and when no bids were made, McCowan was "caught" with the horse and purchased it. The defendant claims that McCowan purchased the horse for himself and that there was no showing that at that time McCowan was acting as an agent of the Montgomery County Livestock Auction Company. A re-

view of the record demonstrates that there was sufficient evidence for the jury to find that McCowan's purchase was made on behalf of the auction company and that it was the auction company which had relied on the insufficient funds check to part with its property. McCowan testified unequivocally that the horse which the defendant purchased belonged to the Montgomery County Livestock Auction Company; that in bidding on and acquiring the horse prior to the sale to defendant, McCowan had bid on and purchased the horse for the auction company utilizing a bidder number assigned to the auction company. Defendant also presented a witness who verified that McCowan had purchased the horse for the auction company prior to its sale to defendant; that the auction company owned the horse at the time defendant purchased it.

■ The defendant also beseeches us to find that the trial court should have instructed the jury on a misdemeanor charge. He reasons that since the value of the property he received was under $100, (the auction price of the horse was $96), he should have been charged with a misdemeanor under § 561.460. The defendant cites no cases that would support his view that the classification of the offense under the statute should be determined by the value of the property received, nor does the language of the statute support his interpretation. "If the *check,* draft or order is one hundred dollars or more the offense is a felony." Section 561.460 (emphasis added). The focus of the statute is on the value of the check. The language is unambiguous. If the check is over $100, then the offense is a felony. No mention is made of the value of the property received as a factor in determining the class of the offense.[2] As the check issued by the defendant had a face value of over $100, under the statute he was properly charged, and the jury was properly instructed that the offense was a felony.

■ In his final point, the defendant attacks the State's verdict-directing instruc-

---

2. Compare § 560.161 RSMo.1969 (penalties for stealing—fourth offense) where the value of the property taken is the crucial factor in determining the classification of the offense.

tion on two grounds: 1) that it is an improper deviation from the MAI–CR; and 2) that a necessary word was omitted. The State's verdict-director reads in part:

"If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about the 16th day of February, 1973, in the County of Montgomery, State of Missouri, the defendant, with intent to defraud, delivered to Montgomery County Livestock Auction Company, a check in the amount of $125.00 upon First North County Bank and Trust Company dated February 16, 1973, payable to Montgomery County Livestock Auction Company;

Second, that the defendant did so to procure any article or thing of value, and *Third, that the Montgomery County Livestock Auction Company relied upon the purported genuineness of the check, and* Fourth, that there were then not sufficient funds in or credit with the bank for the payment in full of the check upon its presentation, and,

Fifth, that at the time the defendant delivered such check he knew he did not have sufficient funds in or credit with the bank for the payment in full of the check; then you will find that defendant guilty of issuing a check with insufficient funds.

However, if you do find and believe from the evidence beyond a reasonable doubt each and all of the foregoing, you must find the defendant not guilty of that offense." (emphasis added)

The defendant correctly states that this instruction modifies MAI–CR 10.18 by adding what has been designated paragraph Third. However, the record clearly shows that paragraph Third was included in the State's verdict director at the request of the defendant. Furthermore, the inclusion of paragraph Third requires the jury to find an additional fact before it can find the

defendant guilty, thus the modification was in the defendant's favor. "A defendant in any criminal case shall have no just cause for complaint because: 1) error was committed during the trial at his instance or in his favor." Rule 26.06 V.A.M.R. See also *State v. Adams,* 497 S.W.2d 147 (Mo.1973). Thus, the defendant cannot justifiably complain of the modification of MAI–CR 10.18.

The defendant's other attack on the form of the verdict director concerns the omission of the word "not" in the paragraph immediately following paragraph Fifth: "However, if you do [ ] find and believe from the evidence beyond a reasonable doubt each and all of the foregoing, you must find the defendant not guilty of that offense." While the omission of "not" from MAI–CR 10.18 constitutes error, its prejudicial effect is to be judicially determined. Rule 20.02(e) V.A.M.R. The omission of "not" renders the instruction internally inconsistent. The last portion of paragraph Fifth instructs the jury that if they find all the elements included in the instruction to exist, they must find the defendant guilty. The following paragraph (due to the omission) then tells the jury that if they find all the elements listed, they must find the defendant not guilty. While this may be somewhat confusing to the jury, the omission of "not" works in the defendant's favor, because the jury is literally instructed to find the defendant not guilty if they find all the elements contained in the verdict director; thus, the defendant's complaint is not legitimate. *State v. Mills,* 521 S.W.2d 495 (Mo.App.1975). Furthermore, any confusion created by the omission was cured by the defendant's converse which instructed the jury that they must find the defendant not guilty if they found that the defendant had not committed any of the elements of the offense charged.[3]

The judgment is affirmed.

SIMEONE, P. J., and KELLY, J., concur.

---

3. The defendant's converse:

"If you find and believe from the evidence: That on or about the 16th day of February, 1973, in the County of Montgomery, State of Missouri, the defendant, did not with intent

to defraud, deliver to Montgomery County Livestock Auction Company, a check in the amount of $125.00 upon First North County Bank and Trust Company dated February 16,

1973, payable to Montgomery County Livestock Auction Company, or

That the defendant did not do so to procure any article or thing of value, or

That the Montgomery County Livestock Auction Company did not rely upon the purported genuineness of the check, or

That at the time the defendant delivered such check he did not know he did not have sufficient funds in or credit with the bank for the payment in full or [sic] the check then you must find the defendant not guilty of issuing a check with insufficient funds."